NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2021 IL App (4th) 200024-U

NO. 4-20-0024

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
September 14, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | Livingston County |
| JACOB NEGRAY, | ) | No. 18CM225 |
|     Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Scott J. Black, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE KNECHT delivered the judgment of the court.
Justices DeArmond and Turner concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court reversed, concluding the evidence was insufficient to sustain defendant's conviction for resisting a peace officer where it did not show the peace officer was still engaged in the authorized act of investigating a theft complaint at the time of the alleged resistance by defendant.

¶ 2      Following a jury trial, defendant, Jacob Negray, was convicted of resisting a peace officer and sentenced to 24 months of conditional discharge. Defendant appeals, arguing (1) the trial court erred when it denied his motion for a directed verdict at the close of the State's case-in-chief, (2) the State failed to prove him guilty beyond a reasonable doubt, and (3) trial counsel provided ineffective assistance by failing to renew the motion for a directed verdict at the close of all the evidence. Because we conclude the evidence did not show the peace officer was still engaged in the authorized act of investigating a theft complaint at the time of the alleged

resistance by defendant, we find the evidence is insufficient to sustain defendant's conviction and reverse.

¶ 3                                I. BACKGROUND

¶ 4                            A. Misdemeanor Complaint

¶ 5          In October 2018, the State filed a one-count misdemeanor complaint against defendant, charging him with the following:

>           "On or about September 22, 2018, in Livingston County,
>
>           Illinois, defendant JACOB B. NEGRAY committed the offense of
>
>           RESISTING A PEACE OFFICER (Class A Misdemeanor), in that
>
>           said defendant knowingly resisted the performance of Livingston
>
>           County Sheriff's Sergeant J.R. Bunting of an authorized act within
>
>           his official capacity, being the investigation into a theft complaint,
>
>           knowing Sergeant Bunting to be a peace officer engaged in the
>
>           execution of his official duties, in that said defendant physically
>
>           struggled with and pulled away from Sergeant Bunting, in violation
>
>           of [section 31-1(a) of the Criminal Code of 2012 (Criminal Code)
>
>           (720 ILCS 5/31-1(a) (West 2018))]."

¶ 6                                B. Jury Trial

¶ 7          In November 2019, the trial court held a jury trial.

¶ 8                            1. *State's Case-in-Chief*

¶ 9          In its case-in-chief, the State first called Deputy Jason Draper as a witness. Deputy Draper testified he had been employed with the Livingston County Sheriff's Department for 16

years.

¶ 10        On the evening of September 22, 2018, Deputy Draper, who was wearing a uniform which contained insignia indicating he was a peace officer, was dispatched to investigate a report of a stolen vehicle. Deputy Draper testified "the report was from [defendant]," and defendant had indicated his vehicle was parked near a bar. Deputy Draper, assisted by Sergeant Doug Bunting (also known as Sergeant J.R. Bunting), responded to the bar, where they located the vehicle. They also located Katie Hirtzig, whom Deputy Draper described as the mother of defendant's children, at an apartment near the bar and then spoke with her about the report of a stolen vehicle. After speaking with Hirtzig, Deputy Draper and Sergeant Bunting drove in a marked patrol vehicle to defendant's home.

¶ 11        Upon arriving at defendant's home, Deputy Draper and Sergeant Bunting spoke with defendant on the back porch of his home. Deputy Draper described the porch as "pretty long," such that it could possibly hold about 12 to 15 people. Deputy Draper testified he first discussed the report of a stolen vehicle with defendant. Deputy Draper summarized defendant's account as follows:

> "The defendant stated that [Hirtzig] had taken the vehicle with his permission. He had called her and wanted the vehicle back. She was unable to bring the vehicle back. She said he could still have it. It was behind the driveway of this building. He said he wasn't going to go get it because he had the kids [at the home]. And as we were discussing this, I think he got flustered with the fact that we weren't going to arrest her for stealing the vehicle."

Deputy Draper testified he then began to discuss the relationship between defendant and Hirtzig with defendant. Deputy Draper explained:

> "I was trying to make him understand that if you are living with somebody for 13 years,—and I specifically said you are together with somebody, obviously you are going to share items. And a truck can't be stolen, one of these items if you are together call them in and say that they stole your items from you if you are using them with their permission.
>
> At that point, he did not like what I had to hear (sic), turned around and said he was done."

Deputy Draper testified defendant began walking towards the door to the inside of the house. Deputy Draper described the next events as follows:

> "[Sergeant] Bunting said, hey, stop. He didn't stop. [Sergeant] Bunting proceeded to grab him and then he jerked away from [Sergeant] Bunting[.]"

¶ 12    After Deputy Draper explained the preceding, the following inquiry occurred by the State:

> "Q. Okay. And, okay. So at this point when you are still engaging in this discussion, are you still investigating the report?
>
> A. Yes, we were.
>
> Q. Okay. And possibly other offenses as well at this point?
>
> A. That is correct.

Q. Okay. So the investigation was still going on?

A. Yes.

Q. Okay. And is that why you were still wanting to continue talking to him?

A. Yes."

¶ 13 Deputy Draper testified he told defendant to stop resisting after he "started pulling away" from Sergeant Bunting. Sergeant Bunting then took defendant down to the ground by using an "arm bar" maneuver. Deputy Draper assisted Sergeant Bunting by trying to control one of defendant's arms. Deputy Draper believed the struggle ensued for "[m]aybe no longer than 30 seconds or so." Deputy Draper also believed he told defendant to stop resisting twice.

¶ 14 On cross-examination, Deputy Draper testified he believed defendant was wearing jeans and shirt during their conversation but acknowledged it was possible defendant was wearing less clothing. Deputy Draper explained defendant told him he initially gave Hirtzig permission to use his vehicle but then took back that permission because he needed to use his vehicle to get to work the next day. Deputy Draper testified both he and Sergeant Bunting posed questions to defendant but Sergeant Bunting posed most of the questions immediately before the altercation. Deputy Draper believed Sergeant Bunting told defendant to stop once and then, after about one-and-a-half seconds, grabbed defendant's arm. Deputy Draper testified the altercation took place about 10 to 12 minutes after the conversation commenced with defendant. Deputy Draper acknowledged defendant was not under arrest when he began to walk towards the door to the inside of the house. Deputy Draper never heard defendant ask if he was being detained or arrested.

¶ 15 Deputy Draper was asked on cross-examination about an arrestee intake

questionnaire and a written report, both of which he prepared after the incident. Deputy Draper testified defendant reported during booking that he had a metal rod in his right leg. Deputy Draper did not recall if defendant reported being hurt during the incident. Deputy Draper acknowledged his written report did not state that defendant pulled away from Sergeant Bunting or that he told defendant to stop resisting. Deputy Draper acknowledged his written report did not indicate defendant resisted in any fashion. Deputy Draper explained his report did not address defendant's resistance because Sergeant Bunting told him he would include such facts in his written report.

¶ 16    The State next called Sergeant Bunting as a witness. Sergeant Bunting testified he had been employed with the Livingston County Sheriff's Department for 17 years.

¶ 17    On the evening of September 22, 2018, Sergeant Bunting, who was wearing a uniform which contained insignia indicating he was a peace officer, was dispatched to investigate a report of a stolen vehicle. Sergeant Bunting agreed the report of a stolen vehicle was "reported by" defendant. As part of the investigation, Sergeant Bunting, along with Deputy Draper, spoke with Hirtzig and then defendant.

¶ 18    Sergeant Bunting testified he and Deputy Draper spoke with defendant on a deck outside his home about the report of a stolen vehicle. He testified the conversation went on "for a while" but he could not remember the length of time. Sergeant Bunting testified Deputy Draper did "most of the interview" with defendant. Sergeant Bunting heard defendant state his girlfriend, Hirtzig, had taken his vehicle and he wanted to report it stolen. Defendant further stated Hirtzig regularly used his vehicle, he had given Hirtzig permission to use the vehicle that day, and he wanted the vehicle back to use it to drive to work.

¶ 19    Sergeant Bunting testified defendant eventually became frustrated during the

conversation based on the responses he heard from the officers. Sergeant Bunting explained, "When we told him we weren't going to take the stolen vehicle report, he became agitated and began to get louder, more boisterous." Shortly thereafter, defendant attempted to go back inside his home. Sergeant Bunting testified he told defendant to stop "[a]t least twice." After defendant did not stop, Sergeant Bunting grabbed defendant by his left arm, at which time defendant tried to "pull away." He then struggled with defendant for a short period, during which time both he and Deputy Draper told defendant to stop resisting. Sergeant Bunting eventually used an arm bar maneuver to take defendant to the ground. Sergeant Bunting testified Deputy Draper assisted with gaining control of defendant. Sergeant Bunting believed a window was broken during the struggle with defendant. Defendant was then placed in the back of the patrol vehicle, at which time Sergeant Bunting heard defendant state he was sorry. Sergeant Bunting also heard defendant acknowledge being told to stop and state he did not want to listen to the command.

¶ 20          After Sergeant Bunting explained the preceding, the following inquiry occurred by the State:

> "Q. Okay. So at the point where you were telling the defendant to stop, were you trying to detain him so that you could investigate further?
>
> A. Yes.
>
> Q. All right. And so talking a little bit I guess about the investigation process. When you are investigating a report, what are some of the steps I guess that you take when you are investigating when someone calls to report something?

"A. We always try to talk to the victim. We always make contact with the suspect. There is always two sides to a story, so we want to get both sides. Sometimes report—people will report something and it will be entirely different. In this example, I will just say he was reporting a stolen vehicle when it really could have been a case of domestic violence.

Q. Okay. So just because you get something is reported to you as an X, that doesn't necessarily mean that that is what it ends up being?

A. Correct.

Q. Okay. So when you investigate something, you are prepared to look into other potential offenses that could have occurred as well?

A. Yes."

¶ 21    On cross-examination, Sergeant Bunting testified Hirtzig had shown him text messages on her phone indicating defendant gave her permission to take the vehicle. Sergeant Bunting did not recall what defendant was wearing when they arrived at his house but believed he would have told defendant to go inside and put additional clothes on if he had been only wearing underwear. Sergeant Bunting acknowledged defendant was not under arrest prior to the altercation. Sergeant Bunting testified defendant did not ask if he was under arrest prior to turning around and walking towards the inside of his house. Sergeant Bunting believed defendant was about three to five feet away from him before he told him to stop. Sergeant Bunting testified defendant did not

comply and then continued toward the house and opened the door. Sergeant Bunting believed the estimate of about one to two seconds was "probably close" for how long it took from the moment he told defendant to stop until he grabbed him. Sergeant Bunting testified Deputy Draper also told defendant to stop at least once. Sergeant Bunting testified defendant never stated he was in pain nor did he accept medical attention when it was later offered to him. When asked if he there were any weapons on or near defendant, Sergeant Bunting testified, "I didn't see any at that time," but then noted, "[t]echnically, everything is a weapon." Sergeant Bunting acknowledged it may have been some light bulbs that were broken during the struggle with defendant.

¶ 22　　　　　Sergeant Bunting was asked on cross-examination about a written report he prepared after the incident. Sergeant Bunting acknowledged his written report did not indicate that he told defendant to stop more than once and to stop resisting or that Deputy Draper told defendant to stop and then assisted in taking defendant to the ground. Sergeant Bunting explained he would not document "things that regularly occur" or repeated statements. Sergeant Bunting initially testified he did not speak with Deputy Draper about preparing the written reports. He later testified he probably spoke with Deputy Draper about how they would handle the "stolen vehicle report."

¶ 23　　　　　Following Sergeant Bunting's testimony, the State rested its case.

¶ 24　　　　　　　　　　2. *Motion for a Directed Verdict*

¶ 25　　　　　After the State rested its case, the trial court excused the jurors. Defendant then, through trial counsel, moved for a directed verdict, arguing the State had "not made out a *prima facie* case." The court denied defendant's motion.

¶ 26　　　　　　　　　　3. *Defendant's Case-in-Chief*

¶ 27　　　　　Defendant elected to testify in his defense. Defendant testified, on the evening of

September 22, 2018, his girlfriend, Hirtzig, left after an argument between the two of them. Prior to doing so, defendant told Hirtzig not to take his vehicle as he had to leave for work early the next morning. Hirtzig left with defendant's vehicle. Defendant called the police and reported his vehicle had been taken. Two police officers later arrived at his home. Defendant testified he spoke with the officers from a breezeway leading to his deck for about five minutes. At the time, he was wearing only his underwear. He also noted large, nine-foot halogen light bulbs were located in the breezeway.

¶ 28            Defendant testified Deputy Draper stated Hirtzig "had unprecedented access and rights to take [his vehicle] whenever she needed to" because they lived together. Defendant disagreed with Deputy Draper's statement, noting his vehicle was registered in only his name. Defendant testified both officers repeatedly asked if he wanted to press charges, to which defendant indicated he did not and simply wanted his vehicle returned. Defendant testified the officers called him "a criminal" and "an over-controlling boyfriend." Defendant testified the officers also suggested he and Hirtzig had "an abusive relationship." At that point, defendant testified, Deputy Draper backed away but Sergeant Bunting was within a few feet of him and "about two notches below shouting," which made him feel very uncomfortable. Sergeant Bunting then asked why defendant was "making movements," to which defendant stated he was not making movements but was rather cold because he was standing outside in his underwear. Sergeant Bunting then reportedly continued saying defendant was "a bad individual and a criminal." Defendant asked what the officers "were going to do," to which Sargent Bunting said, "he wasn't too for sure yet." Defendant testified he asked if he was detained or under arrest, to which Sergeant Bunting indicated he was not. At that point, defendant said, "great; cancel my order, my phone

- 10 -

call." He followed up with "if you guys don't want to do it, let's just be done, I will call Grandma, I will get a ride to work. Thank you for your time." Defendant then turned around and walked away from the officers.

¶ 29　　　　Defendant testified the events after he walked away from the officers happened "very, very quickly." Defendant testified he "made about three steps in" when he heard, "hey, we are not done talking to you." Defendant testified he responded, "it is my Fifth Amendment. I am done talking. I am not under arrest." He then heard, "stop resisting arrest," at which point he began to turn his head while reaching for the doorknob with his right hand. His arm then involuntarily came up behind his back, and he was knocked off balance into the corner where the light bulbs were located, breaking them as he fell into them. Defendant testified he was then "picked up by my underwear, pulled all the way back, slammed down on the deck." At that point, Deputy Draper reportedly approached and asked, "[W]hat is going on here[?]" Deputy Draper then put his hand on his defendant's shoulder. Sergeant Bunting placed his knee on defendant's back and told Deputy Draper to get the patrol vehicle. Defendant testified he told Sergeant Bunting he was in pain and had a metal rod in his leg, to which Sergeant Bunting "kind of chuckled and he pushed his knee further into my back." Defendant testified he told Sergeant Bunting, "I completely give up." Sergeant Bunting released defendant after Deputy Draper returned. He was then taken to the patrol vehicle. While inside the patrol vehicle, defendant told Deputy Draper he was sorry, and Deputy Draper "agreed that things had seemed to have gotten out of line really quick by the sergeant." Defendant testified he was not given a chance to turn around after he was told to stop and he did not intend to resist any arrest.

¶ 30　　　　On cross-examination, defendant testified he and Hirtzig had been dating "[o]n and

off for about 14 years." Defendant did not expect the police officers to show up at his home. He testified he did not give Hirtzig permission to use his vehicle and he stated the same to the police officers. Defendant testified he did not report his vehicle as stolen but rather "called them to have my [vehicle] returned." Defendant agreed he told the officers he wanted to report his vehicle as stolen and have Hirtzig arrested if she was not going to return his vehicle. Defendant acknowledged stating to the officers that he heard Sergeant Bunting tell him to stop and he did not want to listen.

¶ 31　　　　　On redirect examination, defendant testified he did not expect the police officers to show up at his home because he and Hirtzig had the same issue the year before and Hirtzig returned his vehicle after a police officer called her. Defendant also testified he told the police officers he did not want to press charges because he "would have to go get her." Defendant testified he stated to the officers he did not want to listen to them because he was not under arrest.

¶ 32　　　　　Following his testimony, defendant rested his case.

¶ 33　　　　　　　　　　　4. *State's Rebuttal Case*

¶ 34　　　　　In rebuttal, the State first recalled Deputy Draper as a witness. Deputy Draper testified neither he nor Sergeant Bunting made statements to defendant indicating he was a controlling or abusive boyfriend, a bad individual, or a criminal. Deputy Draper testified defendant never asked if he was detained or under arrest. Deputy Draper did not believe Sergeant Bunting was shouting, or close to shouting, at defendant.

¶ 35　　　　　On recross-examination, Deputy Draper acknowledged he left to get the patrol vehicle after defendant was taken to the ground. He also acknowledged giving defendant relationship advice.

¶ 36　　　　　The State next recalled Sergeant Bunting as a witness. Sergeant Bunting testified

he did not recall making any statement to defendant indicating he was a controlling or abusive boyfriend, a bad individual, or a criminal. Sergeant Bunting testified defendant never asked if he was detained or under arrest or stated he was in pain. Sergeant Bunting testified he had a conversational tone with defendant.

¶ 37   Following Sergeant Bunting's testimony, the State rested its rebuttal case.

¶ 38                                    5. *Closing Arguments*

¶ 39   In closing, the State argued that the evidence showed defendant had committed the offense of resisting a peace officer. With respect to whether defendant knowingly resisted the performance of Sergeant Bunting of an authorized act within his official capacity, the State asserted:

> "So what do we know happened? We know that both officers were responding to this report for a stolen vehicle. That there is some conversation between them and the defendant. That he gets upset, he is angry. He is agitated. That he turns and says the heck with this, basically, and to go inside. They tell him to stop. They tell him to stop multiple times. And they tell him to stop resisting multiple times. That in the midst of when they are telling him to stop, Sgt. Bunting tries to make him stop and grabs his arm. And he is pulling away and he is struggling with them. And this goes on for about 30 seconds. And then he said they were able to, between the two of them, get him to the ground and kind of get him secured so that he can't, you know, fight with them anymore.

- 13 -

So this is resisting, Ladies and Gentlemen. This is resisting, pulling away, struggling with police officers when they are telling you to stop and stop resisting. You can't can [*sic*] do that. That is resisting a peace officer. That is resisting the performance of an authorized act within his official capacity. He is trying to investigate this crime. He is trying to stop him from going inside. He is trying to detain him so he can investigate. So that is what the defendant is doing.

You know, in addition, I would note that the defendant did state that he heard them say that, tell him to stop. He heard them. And he decided he didn't want to. So we know that he told them that when they were in the squad car afterwards. Even admitted when he was testifying that he didn't want to admit to that, but he even admitted, yes, I said that. I said that I heard them tell me to stop; I didn't want to listen.

That is what happened here, Ladies and Gentlemen. He was told to stop. He was told to stop resisting. He ignored it. He didn't want to listen to them. He was agitated. He was angry. He wasn't getting his way. And so he was resisting them. That is what happened here. And I would ask that you find him guilty."

¶ 40    In response, the defense argued the State had not met its burden of proving defendant committed the offense of resisting a peace officer. In support, the defense initially

asserted the testimony from the police officers was not credible given the inconsistencies with their written reports. Alternatively, the defense asserted, even if the testimony from the officers was credible, defendant was not given an opportunity to obey Sergeant Bunting's command to stop and any subsequent struggle was because he was in pain as opposed to an attempt to resist the officers.

¶ 41　　　　　In rebuttal, the State initially asserted the testimony from the police officers as opposed to the testimony from defendant was credible. The State then asserted:

> "[T]hey tried to stop him and then he continued to resist. He was pulling away. I think that is the key here, you know, that we are missing is that it's not that the defendant didn't stop; it is that the defendant—they were trying to stop him and then they got into a struggle with him because he still wasn't stopping. Even after they told him to stop resisting, he is still pulling away and struggling with them until between, you know, the two of them, they are able to subdue him. ***
>
> 　　***
>
> 　　You know, that, you know, we teach children that, you know, they need to obey authority. That, you know, they need to listen. And I would argue that we should expect the same thing out of the defendant, that you don't get to just turn around and leave when officers are telling you to stop because they are in an investigation, that once they are telling you to stop, you need to stop. But even more so, once they grab you and they are trying to stop

you, certainly, you can't physically resist them. Certainly, you can't

start pulling away and fighting with them."

¶ 42                                          6. *Jury Verdict*

¶ 43          Following its deliberations, the jury returned a verdict finding defendant guilty of resisting a peace officer.

¶ 44                                     C. Sentencing Hearing

¶ 45          In December 2019, the trial court held a sentencing hearing. Based on the evidence and recommendations presented, the court sentenced defendant to 24 months of conditional discharge, which was subject to certain terms and conditions, including the performance of 150 hours of community service and the participation in an anger management evaluation and any recommended treatment.

¶ 46          This appeal followed.

¶ 47                                         II. ANALYSIS

¶ 48          On appeal, defendant argues (1) the trial court erred when it denied his motion for a directed verdict at the close of the State's case-in-chief, (2) the State failed to prove him guilty beyond a reasonable doubt, and (3) trial counsel provided ineffective assistance by failing to renew the motion for a directed verdict at the close of all the evidence. The State disagrees with each of defendant's arguments.

¶ 49          We begin with defendant's challenge to the sufficiency of the evidence. Defendant asserts the State failed to present sufficient evidence to establish (1) Sergeant Bunting was still engaged in the authorized act of investigating a theft complaint at the time of the alleged resistance, (2) he had the requisite intent to resist the investigation into the theft complaint where the officers

had indicated the investigation had concluded, and (3) the alleged resistance was anything more than a *de minimis* reflex.

¶ 50    When presented a challenge to the sufficiency of the evidence, our inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *People v. Jackson*, 2020 IL 124112, ¶ 64, 162 N.E.3d 223. "A criminal conviction will not be set aside on a challenge to the sufficiency of the evidence unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt." *Id.*

¶ 51    In this case, defendant was charged with committing the offense of resisting a peace officer in violation of section 31-1(a) of the Criminal Code (720 ILCS 5/31-1(a) (West 2018)). Section 31-1(a) provides, "A person who knowingly resists or obstructs the performance by one known to the person to be a peace officer *** of any authorized act within his or her official capacity commits a Class A misdemeanor." *Id.* Thus, to prove defendant guilty of resisting a peace officer, the State had to present evidence establishing, among other things, Sergeant Bunting was still engaged in an authorized act at the time of the alleged resistance by defendant. See *People v. Slaymaker*, 2015 IL App (2d) 130528, ¶ 12, 27 N.E.3d 642 ("[I]f [the peace officer] was not engaged in an authorized act when defendant resisted, defendant's conviction must be reversed.").

¶ 52    Defendant asserts the State failed to present sufficient evidence to establish Sergeant Bunting was still engaged in the authorized act, as charged, of investigating a theft complaint at the time of his alleged resistance. The State, in response, asserts it presented sufficient evidence to establish Sergeant Bunting was still engaged in the authorized act of investigating

- 17 -

defendant's report of a stolen vehicle and any other crime brought to his attention as a result at the time of defendant's alleged resistance.

¶ 53    The evidence presented at trial, viewed in the light most favorable to the prosecution, shows (1) Sergeant Bunting and Deputy Draper were dispatched to investigate a report of a stolen vehicle made by defendant, (2) the officers located the vehicle, (3) the officers located and interviewed the suspect, (4) the officers spoke with defendant outside his home about the report, (5) Deputy Draper informed defendant they were not "going to arrest [the suspect] for stealing the vehicle," (6) Sergeant Bunting informed defendant they "weren't going to take the stolen vehicle report," (7) Deputy Draper began discussing the relationship between defendant and Hirtzig with defendant, and (8) defendant attempted to end the conversation and return inside his home. Only after the preceding events, did the alleged resistance occur by defendant.

¶ 54    From the evidence presented, we fail to see how any rational trier of fact could have found Sergeant Bunting was still investigating the theft complaint at the time of the alleged resistance by defendant. While the State continues to rely upon the testimony from the officers suggesting an investigation was ongoing, we find that conclusory and vague testimony insufficient in light of the other testimony presented. We conclude insufficient evidence was presented to establish Sergeant Bunting was still engaged in the authorized act of investigating the theft complaint at the time of the alleged resistance by defendant. The evidence is insufficient to sustain defendant's conviction, and we need not address the other arguments presented in this appeal.

¶ 55    In so finding, we emphasize our decision is limited to the specific facts and circumstances of this case. Interestingly, the State did not allege in the charging instrument or pursue a theory at trial suggesting defendant's resistance was unlawful in that it occurred when

Sergeant Bunting was engaged in the authorized act of detaining defendant. Had it done so, case law indicates the State would have been required to establish the detention, which was undisputedly not an arrest, was lawful in order to sustain a conviction for resisting a peace officer. See *People v. Shipp*, 2015 IL App (2d) 130587, ¶ 51, 34 N.E.3d 204. The State, on appeal, further does not present any written argument, even after defendant argued in his opening brief that his detention was unlawful, suggesting defendant's conviction may be sustained based upon defendant's alleged resistance to Sergeant Bunting's act of detaining him. In fact, in response to the case law defendant cites to support his argument, the State asserts that case law "is irrelevant to the issue of the officer[']s authority to investigate a crime reported by the defendant himself." Accordingly, our inquiry, given the charging instrument, the manner in which the case was prosecuted, and the arguments presented on appeal, has been limited to whether the State presented sufficient evidence to establish Sergeant Bunting was still engaged in the authorized act of investigating a theft complaint at the time of the alleged resistance by defendant.

¶ 56                                III. CONCLUSION

¶ 57        We reverse the trial court's judgment.

¶ 58        Reversed.